Filed 12/15/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ALEXANDER ALBERTO FRIAS, Defendant and Appellant. | B322762 (Los Angeles County Super. Ct. No. GA103080) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jared D. Moses and Dorothy L. Shubin, Judges. Reversed.

Law Offices of Jason Szydlik and Jason Szydlik for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Alexander Alberto Frias appeals from a judgment of conviction after the jury found him guilty of stalking. On appeal, Frias contends the trial court, in denying his four requests to substitute the Castaneda Law firm as his counsel, violated his Sixth Amendment right to counsel of his choice.[1] The trial court did not abuse its discretion in denying Frias's first three requests to substitute in the Castaneda firm because the firm's attorneys were not ready for trial and the case had been pending for three years, during which time four different attorneys had handled Frias's defense at his request. But denial of Frias's fourth request was an abuse of discretion.

At the time of the fourth request, the case had been pending for three-and-a-half years, the case was set for trial as a six of 10 date, and the prosecutor and deputy public defender had announced ready for trial. This time, however, an attorney from the Castaneda firm announced he was ready for trial, subject to a few witness scheduling issues (the same issues the deputy public defender had). We recognize the trial court was concerned in light of the history of the case that the Castaneda firm's attorneys would seek a further continuance to prepare for trial once the firm was appointed, or that Frias on the day of trial would yet again seek to substitute in new counsel. But nothing in the record shows that the Castaneda firm was not prepared for trial, and the court did not make a further inquiry to confirm its suspicion the firm was not ready. Accordingly, absent any support in the record, the court's concerns were not sufficient grounds on which to deny Frias's request to have retained

---

[1] Because we reverse, we do not reach Frias's contentions that substantial evidence did not support his stalking conviction and his trial attorney provided ineffective assistance of counsel.

counsel of his choice.  If the Castaneda firm's attorneys later requested a continuance or Frias requested new counsel, the court retained the discretion to deny the requests.  And regardless of whether the court believed the deputy public defender or Castaneda firm attorneys would do a better job in defending Frias, that was Frias's choice to make.

Because the denial of Frias's constitutional right to counsel of his choice was structural error, we reverse the judgment and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Evidence at Trial*

In 2017 Courtney C. received a friend request on her Facebook account from Frias, which she denied because she did not know him.  Frias posted comments on Courtney's Facebook "time line" and photographs she had posted.  Courtney deleted Frias's posts and blocked him approximately 10 times, thinking the posts were from "a troll."  Despite her efforts to block Frias, he continued to post on her account.

During February and March 2018, Frias posted messages on Courtney's Facebook account with personal information that showed he had been watching her through her apartment window.  Frias told Courtney he "would love for [her] to be around" in his life and he hoped she would contact him. Courtney felt scared after reading Frias's posts because she had never met him, yet he ended his March 1 post with "Till we meet again."

At 3:00 a.m. on March 10, 2018, Frias knocked on Courtney's apartment door and announced himself by name.

3

Courtney threatened to call the police. By the time the police officers arrived, Frias had left. Approximately an hour later, Frias followed up with a post on Courtney's Facebook account referencing the police officers and making statements that again showed he had been watching her. Courtney's mother followed up by contacting Frias, and Frias (apparently assuming it was Courtney) responded with sexually explicit text messages. On March 13 Frias came to Courtney's apartment building, and Courtney again contacted the police. The police arrived and found Frias sitting in the building's parking lot. The officers detained him, and at some point Frias shouted, "'Courtney, baby, love me.'"

B.     *The Verdict and Sentencing*

The jury found Frias guilty of felony stalking. (Pen. Code, § 646.9, subd. (a).) On August 1, 2022 the trial court imposed and suspended Frias's sentence, placed him on formal probation for two years, and ordered him to serve 192 days in county jail with 192 days of credit for time served. The court also issued a 10-year protective order requiring Frias not to contact Courtney and to stay at least 100 yards away from her.

Frias timely appealed.

## DISCUSSION

A.     *The Trial Court Abused Its Discretion in Denying Frias's Final Request for Substitution of Counsel*

1.     *Trial court proceedings*

On May 10, 2018 deputy public defender Jeffrey Graves represented Frias at the preliminary hearing. On October 25,

4

2018 the trial court granted Frias's request to substitute in Mark Melnick as his attorney.

At the August 23, 2019 hearing, Melnick stated Frias was requesting the court relieve him and appoint the public defender. Melnick added, "I would say we have reached an impasse in our relationship, and there is a conflict at this point." The trial court[2] granted Frias's request and appointed the public defender's office (deputy public defender Noah Cox) as counsel. The court informed Frias, "You have the right to have counsel of your choice, and if you want to have the public defender, I will reappoint them. However, I express my concern that this case has been pending for a year with your private counsel. You had the public defender for three months, [then] pending for a year with Mr. Melnick. I express my concern that this may be for purposes of delay. But I am reappointing the public defender."

On November 4, 2019 Frias requested Amber Gordon be substituted in as his attorney. The trial court granted Frias's request but again expressed concern about Frias's "conduct going back and forth with different attorneys when he's already been admonished about this."

On October 1, 2020 the prosecutor and Gordon announced they were ready for trial. The trial court set October 6 as the trial date. However, on October 6 Gordon declared a doubt as to Frias's mental competence, and the court suspended the criminal proceedings.

On December 3, 2020, while court proceedings were suspended, Gordon informed the trial court that Frias was

---

[2]     Judge Dorothy L. Shubin presided over the pretrial hearings, including Frias's requests for substitution of attorney.

requesting new counsel, which Gordon supported because of a breakdown in communication. The court expressed its belief that Frias was "trying to manipulate the process in this case by just refusing to communicate with his attorney." But in light of the conflict, the court granted Frias's request to substitute Matthew Cargal in as his attorney.

Frias failed to appear in court on the morning of January 4, 2021. When the trial court inquired about Frias's whereabouts, Cargal responded that he had "made numerous attempts to contact [Frias] since the last court date" but had not spoken to him since December 16, 2020. Frias appeared in court later that morning. Cargal moved to withdraw as counsel on the basis Frias made it difficult for Cargal to represent him, and further, Frias said he could not pay Cargal's fees. The court granted Cargal's motion and, at Frias's request, reappointed the public defender's office (Cox).

On April 5, 2021 a psychiatrist submitted a written report opining that Frias was competent to stand trial. On April 9 the trial court found Frias was competent to stand trial and reinstated the criminal proceedings.

On June 23, 2021 Frias requested that Sergio Castaneda from the Castaneda firm be substituted in as Frias's counsel. The trial court asked Castaneda if he was "ready to go to trial within the period." Castaneda responded he was ready but was hoping to have time to review some issues with the defense expert. The court again asked, "Are you ready to go to trial within the period? Zero of 20?" Castaneda answered, "Zero of 20,

I would say no."[3] The court then inquired whether Castaneda had reviewed the discovery. Castaneda replied, "I have reviewed some, but I do have the file now from [Cox] who sent this over to me about an hour ago. So I will have more once I review that."[4]

The trial court denied Frias's request, stating, "[T]his case has been pending for years with repeated change of counsel by Mr. Frias. And I am hearing that Mr. Cox will be close to announcing ready. He's just finalizing an expert report. The timing of new counsel's readiness is highly unclear. And I find that this request to substitute is a delay tactic." Castaneda

---

[3] Under Penal Code section 1382, subdivision (a)(2), a criminal case must be dismissed absent good cause, with specified exceptions, where a defendant is not brought to trial within 60 days of arraignment on an indictment or information, or reinstatement of criminal proceedings. Under Penal Code section 1382, subdivision (a)(2)(B), which provides for a limited time waiver, a case shall not be dismissed if "[t]he defendant requests or consents to the setting of a trial date beyond the 60-day period." Further, "[w]henever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver [of the 60-day requirement], the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (*Ibid*.) Where defendants give only a limited time waiver of the 60-day limit, trial courts typically set a trial date as a "zero of 10" date for trial, meaning that the case must be dismissed if not brought to trial within the 10-day period, absent the defendant's consent or a showing of good cause. (*People v. Superior Court (Arnold)* (2021) 59 Cal.App.5th 923, 936.) We assume the court, in referring to a "zero of 20," was inquiring whether the attorney would be ready for trial within 20 days.

[4] Cox confirmed he had provided the entire record to the Castaneda firm.

responded that he was asking for no more time than Cox would need, and therefore, "there would be no further delays." The court replied, "I don't really see how you are in a position to represent that since you haven't received all of the discovery." The court added, "Aside from that . . . my primary concern here is . . . Mr. Frias with the pattern of constantly coming in with new attorneys when this case is so old. And he keeps hiring new counsel and going back to the public defender. And virtually every time he's been here, the court expresses a concern about the age of the case and the need to move the matter forward. So for all these reasons, the court denies the request." The court continued the case to July 19, 2021 as day zero of 10 for trial.

On July 19, 2021 Frias requested Edward Yim from the Castaneda firm be substituted in as his attorney. Yim stated, "[O]ur office would be prepared to address both the *Pitchess*[5] motions and . . . continue the process of having the expert evaluation completed. Our office has been in communication with Mr. Frias's current attorney, and it is our intent to not cause any further delays if our motion to substitute is granted." The trial court noted "the information was filed on May 25, 2018" and "[t]he case is over three years old." The court denied the request, explaining, "I do recognize that with the *Pitchess* [motions] being filed that that will need to be determined, and the court will need to grant a short continuance on that basis. But given the age of the case, the procedural history, all of the findings the court has

---

5       *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. Cox filed both a *Pitchess* motion and a supplemental *Pitchess* motion to obtain information on the District Attorney's prosecution of one of the police officers who responded to Courtney's 911 call on March 13, 2018.

previously made, and the fact that a defendant's right to counsel, obviously is exceptionally important, counsel of his choice, but it's not absolute, and the court is within its discretion to deny a continuance to secure new counsel.  And for all the reasons stated today, as well as the various dates when the court has previously made findings, the court denies the request.  It would cause delay in the case and appears to the court to be for the purposes of delay."  The court continued the case to August 4, 2021 as day zero of 20 for trial.

At the August 25, 2021 hearing, Cox stated that Yim was present and Frias was again requesting to substitute in the Castaneda firm as counsel.  The court denied the request, stating, "[T]here's a very long history of the court granting Mr. Frias the opportunity of different counsel, but the court finds this is for the purposes of delay. . . .  [The case] has been set for trial until the issue of the *Pitchess* came up.  So although the court understands and appreciates the right to counsel of choice, that right is not absolute.  It's necessarily limited by countervailing state interests and proceeding with prosecution on an orderly, expeditious basis."  The court continued the case to September 22, 2021 as day zero of 20 for trial.

On September 22, 2021 Frias informed the court that Yim was present in court to substitute in as counsel for Frias.  Yim responded that his office was "not seeking to substitute in" that day and "was not planning to address the court."  Yim added, "However, at a future date, as Mr. Cox referenced, perhaps after the *Pitchess* issues have been resolved . . . we plan to then seek to appear and will seek to substitute in as counsel."  The court again continued the case for trial.

At the November 30, 2021 hearing, which was day zero of six for trial, Cox raised concerns whether the Burbank police officers who responded to Courtney's 911 calls would be available for trial. The prosecutor and Cox subsequently informed the court that they had spoken to the four police officers, and the officers agreed to be on call for trial. Cox also informed the court that the defense expert witnesses, Drs. Crandall and Walker, had not responded regarding their availability for trial.[6] Cox added that the prosecutor had agreed to allow Dr. Crandall to "testify via Webex" (videoconference) and "[w]hile waiting to hear back from Dr. Crandall, I would, nonetheless, expect to be ready." The court stated, "It sounds like you're announcing ready, just provided that the expert confirms . . . that she will be available during the applicable time period." Cox answered, "Yes." The prosecutor confirmed she was ready for trial and had "agree[d] to have Dr. Crandall appear via Webex."

After the trial court ordered the parties to report to another courtroom for trial, Cox told the court that Frias wanted Yim and the Castaneda firm to represent him. Yim stated, "Mr. Frias has retained our office and is desirous of having us represent him in this matter. And it is not our intention to cause any additional delays in this matter." The trial court asked, "Are you saying your office is ready for trial?" Yim answered, "We have been in communication with Mr. Cox and his office and also close communication with Mr. Frias as well." The court stated, "That's not the same as saying you're ready for trial." Yim responded, "At this time, your honor, we are ready for trial. Subject to the

---

[6]     Cox intended to call either Dr. Crandall or Dr. Walker at trial depending on which defense expert was available.

scheduling that was discussed on the record earlier with the experts and things like that.  But I'm sure—it sounded like everything got addressed."  The court queried Yim, "How is it that you can represent you're ready for trial if—have you conferred with experts or any witnesses?"  Yim responded, "We have—I've been in consultation with Mr. Cox during the preparation of this trial."  After further discussion, the court repeated it had "grave concerns about readiness as well as the age of the case."

The prosecutor expressed her "concern . . . that if the substitution is granted and Mr. Yim sees the full case, that all of a sudden there will be a request for a continuance. . . .  I don't want a last minute, well, I didn't know about this or now that I'm in charge, I want this expert or something to further delay this case."  The court responded, "Well, that's my concern as well, as the court has stated on numerous occasions previously."  Frias stated, as he had at prior hearings, "I would like the Castaneda Law Firm and Edward Yim to represent me in this case."  The court denied Frias's request "on the grounds that this will result in a delay, and, hence, is a delay tactic."

The trial court recounted that it had granted numerous requests by Frias to substitute in new counsel, including Melnick, Cox, Gordon, and Cargal.  The court continued, "Ultimately, the public defender was reappointed at Mr. Frias's request.  Then Mr. Frias had an attorney Sergio Castaneda appear, he thought, to substitute in.  That was over half a year ago, and the court at that time found it was a request for purposes of delay.  Since that time, Mr. Cox has remained on the case.  The court has observed the massive amount of work he's done in terms of *Pitchess* motion, discovery on *Pitchess*, follow-up on *Pitchess*.  So there's a

large volume of material there, as well as obtaining a number of different expert reports and opinions. So he's fully prepared, and it's time for the case to proceed to trial without further delay."

Jury selection commenced on December 6, 2021.

### 2. *A defendant's right to choose counsel*

"The Sixth Amendment right to counsel guarantees a criminal defendant the right to choose his or her own counsel when the defendant does not need appointed counsel." (*People v. Woodruff* (2018) 5 Cal.5th 697, 728 (*Woodruff*), citing *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 144 (*Gonzalez-Lopez*); accord, *People v. Verdugo* (2010) 50 Cal.4th 263, 310-311 (*Verdugo*) ["The right to retained counsel of choice is—subject to certain limitations—guaranteed under the Sixth Amendment to the federal Constitution."].)

"'In California, this right "reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain."'" (*People v. O'Malley* (2016) 62 Cal.4th 944, 1004; accord, *Verdugo*, *supra*, 50 Cal.4th at p. 311; see *People v. Courts* (1985) 37 Cal.3d 784, 789-790 (*Courts*) [criminal defendant has right to replace appointed counsel with retained counsel of choice].) "'The right to discharge a retained attorney is, however, not absolute. [Citation.] The trial court has discretion to "deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]."'" (*O'Malley*, at p. 1004; accord, *Verdugo*, at p. 311; see *Gonzalez-Lopez*, *supra*, 548 U.S. at p. 152 [recognizing "trial court's wide latitude in balancing the right to counsel of choice against the needs of

fairness" and "the demands of its calendar"].) "In this context, while 'a defendant seeking to discharge his retained attorney is not *required* to demonstrate inadequate representation or an irreconcilable conflict, this does not mean that the trial court cannot properly consider the absence of such circumstances in deciding whether discharging counsel would result in disruption of the orderly processes of justice.'" (*O'Malley*, at p. 1004; accord, *People v. Maciel* (2013) 57 Cal.4th 482, 513 (*Maciel*).)

"'[T]hough it is clear that a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney.'" (*Woodruff, supra*, 5 Cal.5th at p. 728; accord, *People v. Williams* (2021) 61 Cal.App.5th 627, 631 ["while a criminal defendant's right to counsel of choice is not absolute, that right may be overridden only under narrow, compelling, and specifically delineated circumstances"].) The erroneous deprivation of a defendant's right to counsel of choice is structural error requiring automatic reversal. (*Gonzalez-Lopez, supra*, 548 U.S. at p. 150; *Woodruff*, at p. 728.)

### 3. *The trial court abused its discretion*

Frias contends the trial court abused its discretion in denying his June 23, July 19, August 25, and November 30, 2021 requests to substitute in Castaneda and Yim of the Castaneda firm as Frias's counsel. We agree the trial court abused its discretion in denying Frias's November 30, 2021 request to substitute in Yim and the Castaneda firm notwithstanding the court's concerns that the request was a delay tactic and Yim would not be ready for trial.

13

In June 2021 when Frias first requested substitution of Castaneda as his counsel, the case had been pending for more than three years. Although some of the trial delay was attributable to the COVID-19 pandemic and the six-month delay to assess Frias's competence to stand trial, it was reasonable for the trial court to attribute a significant portion of the delay to Frias's repeated substitution requests. Frias was represented at the preliminary hearing in May 2018 by deputy public defender Graves. The trial court granted Frias's first four requests to substitute in new counsel: (1) on October 25, 2018 to substitute retained attorney Melnick; (2) on August 23, 2019 to substitute the public defender's office (Cox); (3) on November 4, 2019 to substitute retained attorney Gordon; and (4) on December 3, 2020 to substitute retained attorney Cargal. And, after Cargal requested to be relieved as counsel (asserting Frias was making it difficult to represent him), on January 4, 2021 the court granted Frias's request to reappoint Cox. Each time the court granted Frias's request, the court raised its concern that Frias's repeated requests for new counsel were made for the purposes of delay.

The trial court did not abuse its discretion in denying Frias's three requests in June, July, and August 2021 to substitute in the Castaneda firm. When Frias sought to have Castaneda substitute in as counsel on June 23, 2021, Castaneda stated "there would be no further delays" because he was "not asking for any additional time." But Castaneda acknowledged he had reviewed only some of the discovery (having received the record from Cox an hour before the hearing), and when asked whether he would be ready within the time period for trial (20 days), Castaneda admitted he would not. When Yim sought

14

to substitute in as counsel on July 19, 2021, he stated the law firm had "been in communication with" Cox and did not intend to cause further delay. However, Yim never stated whether he could be ready by August 4, 2021, the date the court set as zero of 20 for trial. And on August 25, 2021 Cox informed the court that Yim was present in court and Frias wanted to substitute in Yim as counsel. But Yim did not address the court or explain whether he would be ready for trial.

However, the trial court abused its discretion in denying Frias's request to substitute in Yim as counsel on November 30, 2021. The court was rightly concerned that another attorney substitution—following four prior substitutions—could further delay the trial and was made by Frias for that purpose. But Yim represented for the first time that he was ready for trial and was not seeking a trial continuance. By this time, the Castaneda firm (1) had sought to substitute in for the prior five months; (2) had possession of the entire digital file from Cox during that five-month period; and (3) had been in communication with Cox, who "tried to ensure" retained counsel could "hit the ground running."

The People contend Yim was equivocal about his readiness for trial because Yim stated he was "ready for trial, subject to the scheduling that was discussed with the experts and things like that." But Yim added that "it sounds like everything got addressed," acknowledging that the prosecutor and Cox had resolved Cox's concerns over the availability of the police officers for trial. And by the time Frias requested Yim be substituted in as counsel on November 30, Cox and the prosecutor had worked out the issues relating to testimony by the defense experts. Further, any trial delay that would have resulted from unavailability of the officers or defense experts would have

affected the defense's readiness for trial regardless of whether Cox or Yim represented Frias.

The prosecutor and trial court had a legitimate concern based on the history of the case that, notwithstanding Yim's representation he was not seeking a continuance, Yim might request a continuance once he substituted in as counsel and finished his preparation for trial. But nothing in the record as of November 30 showed Yim's statement that he was ready for trial was not credible. Nor did the court make any inquiries of Yim to discern whether he was in fact ready, for example, holding an in camera hearing (as Cox had proposed) to inquire into whether Yim was ready to call his witnesses on the trial date. Further, the court retained discretion to deny a future continuance request given Yim's assurances that he was ready for trial. Likewise, the court could deny a future request by Frias for yet another substitution of counsel. The *possibility* of future delay did not warrant denial of Frias's right to counsel of his choice "based on considerations of judicial efficiency." (*Courts, supra*, 37 Cal.3d at pp. 794-795 [trial courts must "exercise 'resourceful diligence' in protecting the right to chosen counsel . . . even when a byproduct of a concrete and timely assertion of that right is some disruption in the process"].)

*Courts* is instructive. In *Courts*, two months before trial a defendant charged with murder met with a private attorney in an effort to replace his appointed counsel, but the defendant did not yet have the funds to pay the attorney's retainer fee. (*Courts, supra*, 37 Cal.3d at pp. 787-788.) A week before the trial date, the deputy public defender told the court that the defendant wanted a continuance to hire private counsel; the court denied the request, finding it was untimely. (*Ibid*.) On the day of trial,

16

the defendant renewed his request, explaining in a declaration that he did not have confidence in his deputy public defender who had not previously tried a case of that magnitude. (*Id*. at p. 789.) The trial court (a second judge) denied the request. (*Id*. at pp. 788-789.) The Supreme Court reversed the judgment, explaining "'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" (*Id*. at p. 791.)

Here too, the trial court abused its discretion by insisting that the case proceed to trial with Cox—based on the court's perception that Cox was best prepared to handle the case, describing him as "fully prepared" given the "massive" amount of work he had done on the *Pitchess* motion, supplemental *Pitchess* discovery, and expert reports. By focusing on Cox's preparation for trial instead of Yim's representation that he was ready for trial, the trial court, as in *Courts*, improperly focused on the efficiency of proceeding to trial at the expense of Frias's constitutional right to be represented at trial by counsel of his choice.

The Supreme Court cases relied on by the People, finding no abuse of discretion in denying the defendants' untimely motions to substitute new counsel, are distinguishable because in each case substitution would have significantly delayed the trial. In *Maciel, supra*, 57 Cal.4th at pages 510 to 511, the trial court granted the defendant's first two requests to substitute in retained counsel but denied the defendant's third request made after the case was pending for two years, explaining it would take at least six months for a new attorney to prepare for trial. The Supreme Court reasoned in finding no abuse of discretion, "At the time the motion was made, the case had been pending for two

17

years. Trial was imminent and, in fact, began about six weeks later. Defendant had no substitute counsel in mind; rather, he requested that the court appoint counsel. . . . In evaluating timeliness, the trial court properly considered the long delay that would have resulted from changing counsel in this case. The trial court, which had been through at least one trial of the former codefendants, expressed concern that further delay would exacerbate the witnesses' reluctance to testify. The trial court also noted the absence of abandonment or inadequate representation by counsel or an actual conflict of interest." (*Id.* at pp. 512-513.) The Supreme Court concluded the trial court "reasonably denied defendant's motion because relieving counsel under these circumstances would have resulted in the "'disruption of the orderly processes of justice.'"" (*Id.* at p. 513; see *O'Malley, supra*, 62 Cal.4th at pp. 1006-1007 ["The court likely would have been well within its discretion to deny such a request [to discharge counsel], given that it would have come in the midst of defendant's penalty phase case and without any substitute counsel at hand."]; *Verdugo, supra*, 50 Cal.4th at p. 311 [no abuse of discretion in denying motion to discharge counsel made in the middle of an evidentiary hearing on motion for new trial where new counsel would need significant time to study lengthy trial record and witnesses' memories would likely fade over time given that a year had already passed since trial].)[7]

_____

[7]     *People v. Keshishian* (2008) 162 Cal.App.4th 425, relied on by the trial court, is similarly distinguishable. There, the defendant requested a continuance to hire new attorneys on the day set for trial after the case had been pending for two-and-a-half years. (*Id.* at p. 428.) As the Court of Appeal explained in affirming the trial court's denial of the request, "An indefinite

Unlike *Maciel*, *O'Malley*, and *Verdugo*, in which the defendants sought to discharge their attorneys but had not identified substitute counsel, and new counsel would need significant time to prepare for trial, Frias retained the Castaneda firm five months before trial, and Yim declared he was ready for trial. Further, in *Maciel* and *Verdugo*, the trial courts were concerned the delay would impact the willingness of the witnesses to appear (*Maciel*) or their ability to recall the underlying events (*Verdugo*). (See *Maciel, supra*, 57 Cal.4th at pp. 511, 513; *Verdugo, supra*, 50 Cal.4th at p. 311.) Although Frias contributed to the trial delay by discharging appointed counsel (Graves) and three retained counsel (Melnick, Gordon, and Cargal), there was no showing that substitution of the Castaneda law firm on November 30, 2021 would cause any further delay or impact witness testimony. On this record, the trial court abused its discretion in denying Frias his right to counsel of his choice.

Because the erroneous deprivation of Frias's right to counsel of choice is a structural error, we reverse. (*Gonzalez-Lopez, supra*, 548 U.S. at p. 150; *Woodruff, supra*, 5 Cal.5th at p. 728.)

---

continuance would have been necessary, as appellant had neither identified nor retained new counsel. Witnesses whose appearances had already been scheduled would have been further inconvenienced by an indefinite delay." (*Id.* at p. 429.)

## DISPOSITION

The judgment is reversed.

FEUER, Acting P.J.

We concur:

MARTINEZ, J.

EVENSON, J.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.